UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JEANNE B. BRYANT, solely in her capacity as court-appointed independent fiduciary for RETIREMENT SECURITY PLAN AND TRUST,<br><br>                   Plaintiff,<br>   v.<br><br>TAMARACK MUNICIPAL ASSOCIATION, INC., an Idaho corporation,<br><br>                   Defendant. | Case No. 4:14-cv-00339-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

**INTRODUCTION**

Plaintiff Jeanne Bryant, as an independent fiduciary for Retirement Security Plan and Trust ("RSPT"), filed this suit seeking to collect rent from Tamarack Municipal Association, Inc. ("TMA") for TMA's use of a golf and ski resort. TMA now moves to dismiss the suit, primarily arguing that Bryant's right to relief is limited to a foreclosure proceeding by Idaho's "single-action rule." An exception to the single-action rule pertaining to assignments of rent applies and saves Bryant's complaint. For this reason,

and because there is no merit in TMA's alternative arguments, the Court will not dismiss this suit.

## BACKGROUND

### I

In 2010, Matthew Hutcheson defrauded the members of RSPT of $3,276,000.00 and used the proceeds of his crime to further his plan to purchase Tamarack resort, a four-season golf and ski resort located approximately eight miles southwest of Donnelly, Idaho.[1] As is relevant here, Hutcheson acquired a mortgage and an assignment of rents encumbering Osprey Meadows Golf Course and a portion of the Lodge at Tamarack (collectively "Osprey Meadows" or the "property"). Osprey Meadows is owned by West Mountain Golf, LLC ("WMG").

In the wake of Hutcheson's conviction, Bryant acquired the mortgage and assignment of rents. She holds the position of "Lender" as defined in those documents.

The mortgage gives Bryant the right, upon default by WMG, to take possession of Osprey Meadows and collect rent from "any tenant or other user of the [p]roperty." *Mortgage*, dkt. 1, ex. A, at 5.

Prior to default by WMG, the assignment of rents gives Bryant the right to collect and receive rents. In furtherance of that right, the assignment provides that Bryant may

---

[1] The facts are taken from the complaint and those documents on which the complaint relies. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Those documents cited by TMA in its memorandum in support of its motion to dismiss which were not referenced in the complaint are not properly before the Court. The Court does not rely on those documents in deciding this motion, and Bryant's unopposed motion to strike, dkt. 10, is granted.

(1) direct that all rents be paid to her, (2) enter and take possession of the property, (3) "carry on all legal proceedings necessary for the protection of the [p]roperty," (4) "remove any tenant or tenants or other persons from the [p]roperty," (5) "rent or lease the whole or any part of the [p]roperty for such term or terms and on such conditions as [Bryant] may deem appropriate," and (6) "do all such other things and acts with respect to the [p]roperty as [Bryant] may deem appropriate." *Assignment of Rents*, Dkt. 1, ex. B, at 2. The assignment of rents grants Bryant these same rights with respect to leases entered into by WMG:

> "RENTS" ALSO MEANS "LEASES". The word "Rents" also includes all Grantor's right, title and interest in all leases now in existence and entered into hereafter which demise any portion of the real property described in this Assignment of Rents, together with all subleases, amendments, modifications, renewals, replacements, and extensions, together with all guarantees of lessees' obligations under the leases ("Leases"). All rights which Grantor grants to Lender relating to the Rents and all representations and warranties Grantor makes regarding the Rents, Grantor also grants and makes to Lender relating to the Leases.

*Id.* at 3.

The assignment of rents further grants Bryant the power to act as landlord:

> Lender may, at is sole option without any obligation to do so, assume all rights of the landlord under the Leases, may operate and manage the property, enter into and enforce the Leases, terminate the Leases and take any or all actions Lender deems prudent to preserve its rights to the Rents and Leases and collect amounts owing to it.

*Id.* at 3-4.

II

TMA is the homeowners' association for the properties surrounding Tamarack Resort. In two contracts, TMA leased from WMG the right for its members to use Osprey Meadows. The leases obligated TMA to pay the operating expenses for Osprey Meadows, but neither lease required TMA to pay sums beyond those expenses.

The second lease contains a clause that acknowledges that Osprey Meadows "is encumbered and subject to secured interests," and that TMA's "rights under [the lease] are expressly subject to and subordinate to the Secured Interests and the rights of the respective secured parties." *May 1, 2012 Lease*, dkt. 1, ex. F, at 9. The second lease also provides, subject to certain exceptions not applicable at this time, that TMA "will not directly or indirectly create or allow to remain, and will promptly discharge at its expense any lien . . . upon the [p]roperty or any attachment, levy, claim or encumbrance resulting from [TMA's] use of or activities on the [p]roperty." *Id.* at 11.

Termination by the landlord of the two leases are governed by distinct terms. The first lease states that it "may be terminated by either party on 30 day's [sic] notice to the other." *July 3, 2009 Lease*, dkt. 1, ex. E, at 6. The second lease provides, "Landlord may terminate this Agreement in the event that . . . [TMA] breaches any material term of this Agreement and fails to cure such breach within fifteen (15) days after receiving written notice from Landlord of the breach." *May 1, 2012 Lease*, dkt. 1, ex. F, at 10.

## III

Since Bryant has been in possession of the mortgage and assignment of rents, WMG has been insolvent and has not been paying on the note. As a result of WMA's default, and the leases not generating revenue beyond what is required to pay the operating expenses associated with the property, Osprey Meadows' property taxes went unpaid. This resulted in a tax lien attaching to the property. At the time the complaint was filed, the sum of $140,000.00 was owed, and interest and penalties continue to accrue.

At first, Bryant sought to foreclose on the property to, among other things, resolve the outstanding tax lien. However, when negotiations between Bryant, TMA, and another interested party over rents and other obligations after the foreclosure sale failed, Bryant concluded that going through with the sheriff's sale was too risky and ceased the foreclosure proceedings.

As an alternative, Bryant terminated the leases between TMA and ordered TMA to vacate the property. TMA disagreed that Bryant had the authority to terminate the lease and refused to vacate the property.

Bryant notified TMA that if its members continued to use Osprey Meadows after June 1, 2014, Bryant would consider TMA a holdover tenant. The holdover lease, according to Bryant, would be a one-year term with annual rent in the amount of $693,500.00, payable in monthly installments. TMA did not respond to Bryant's notice regarding the holdover tenancy.

TMA remained, and remains, in possession of Osprey Meadows, but it has not paid the monthly rent. As a result, Bryant filed this suit claiming that (1) TMA breached the terms of the holdover lease, (2) TMA breached the terms of the original two leases for Osprey Meadows, and (3) TMA has been unjustly enriched by its continued use of Osprey Meadows. TMA now moves to dismiss Bryant's complaint for failing to state a claim, *Fed. R. Civ. P.* 12(b)(6), and for failing to join a purported indispensable party, WMG, *Fed. R. Civ. P.* 12(b)(7), 19.

## DISCUSSION

1. *Failure to State a Claim*

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more

than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the court need not accept as true, legal conclusions that are couched as factual allegations. *Id.* Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*A.*

TMA argues that Bryant's complaint must be dismissed because it violates Idaho's "single-action rule." Under Idaho Code § 6-101(1), "[t]here can be but one action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real estate," and that is a foreclosure proceeding against the property, *Elliott v. Darwin Neibaur Farms*, 69 P.3d 1035, 1042 (Idaho 2003). "'Only if there is a deficiency [after the foreclosure sale], will the mortgagee be allowed to pursue the other assets of the mortgage debtor." *Id.* (quoting *Fed. Land Bank of Spokane v. Parsons*, 796 P.2d 533, 536 (Id. Ct. App. 1990)). Thus, according to TMA, until Bryant purchases Osprey

Meadows at a sheriff's sale, she has no right to modify or terminate the lease between TMA and WMG. The Court is not persuaded.

Exempt from the single-action rule is "any . . . act[] or proceeding[] . . . [t]o enforce a security interest in, or the assignment of, any *rents*, issues, profits or other income of any real or personal property." § 6-101(3)(b) (emphasis added). The assignment of rents, independent of the mortgage, gives Bryant the authority to act as landlord, lease the property under reasonable terms, and carry on all legal proceedings necessary for the protection of the property. These provisions appear to give Bryant the right to terminate the leases in accordance with their respective terms and impose a holdover tenancy. Whether Bryant has properly done so is not now before the Court. The issue is whether Idaho's single-action rule bars Bryant's claims, and, while it might affect Bryant's options under the Mortgage, it does not limit her right to enforce her rights under the assignment of rents.

According to TMA, § 6-101(3)(b) does not save Bryant's complaint because "this is not a proceeding to enforce [the assignment of rents], [sic] rather, it is a proceeding for reformation and improvement of that security interest." *TMA's Br.*, dkt. 5-1, at 5 n.1. Not so. Bryant is exercising the rights granted to her by the assignment of rents as written. It is the leases which have been terminated and a new lease imposed. Therefore, § 6-101(3)(b) applies, and the single-action rule does not bar Bryant's claims.

B.

The same logic answers TMA's second primary objection, which is that Bryant may not alter the terms of the leases unilaterally, but may only enforce the rights assigned to her. Bryant has not altered the terms of the leases.[2] What Bryant claims to have done is terminate the leases in the manner provided by their terms.[3] Having done that, and once TMA refused to vacate the property, Bryant opted to hold TMA to a new lease, as is a landlord's right. *See Lewiston Pre-Mix Concrete, Inc. v. Rohde*, 718 P.2d 551, 555-56 (Id. Ct. App. 1985) ("When a lessee holds over after his tenancy for a fixed term of years expires, the lessor must elect to either treat the lessee as a trespasser or hold him to a new tenancy."). While the terms of the holdover lease likely will be at issue as this case progresses, *see id.* at 556, Bryant has plausibly pleaded the existence and breach of a holdover lease.

C.

TMA argues that Bryant's unjust enrichment claim fails because the two parties do not share a contractual relationship. This argument turns the law of unjust enrichment on its head. "[T]he doctrine of unjust enrichment sounds in implied in law contract or quasi contract." *Beco Constr. Co. v. Bannock Paving Co.*, 797 P.2d 863, 866 (Idaho 1990). "[A] contract implied in law is not a contract at all, but an obligation imposed by law for the purpose of bringing about justice and equity without reference to the intent or the

---

[2] To the contrary, Bryant's second claim is for breach of the second lease.
[3] The original lease allowed for termination by either party upon thirty days notice, which Bryant gave TMA. The second lease allowed for termination upon a material breach and fifteen days notice. Bryant alleges TMA breached the second lease by allowing the tax lien to attach, and she provided the requisite notice.

agreement of the parties and, in some cases in spite of an agreement between the parties. It is a non-contractual obligation that is to be treated procedurally *as if* it were a contract . . . ." *Id.* (quoting *Cont'l Forest Prod., Inc. v. Chandler Supply Co.*, 518 P.2d 1201, 1205 (Idaho 1974) (citations omitted)). Thus, a contractual relationship is not a prerequisite for an unjust enrichment claim. To the contrary, as "a species of implied contract," a claim for unjust enrichment "will not normally lie where there is an express contract governing the relationship of the parties." *See Bakker v. Thunder Spring-Wareham, LLC*, 108 P.3d 322, 338 (Idaho 2005).

*Great Plains Equipment, Inc. v. N.W. Pipeline Corp.*, 979 P.2d 627 (Idaho 1999), on which TMA relies, does not require a different result. In that case, the Idaho Supreme Court held that subcontractors' rights of recovery against a landowner for work the subcontractors had performed did not include claims for quantum merit or unjust enrichment. *Id.* at 640. Absent an express contractual relationship with the landowner, the subcontractor's cause of action was limited to claims authorized by Idaho's mechanic's lien statute. *Id.* at 641. However, the court was speaking of the "rule in this area," i.e., those relationships under the purview of the mechanic's lien statute, and was not displacing those principles discussed above. *See id.*; *see also I.C.* § 45-501 ("Right to Lien"); *BMC West Corp. v. Horkley*, 174 P.3d 399, 402 (Idaho 2007) (explaining that the to a mechanic's lien "is a right granted and therefore determined by statute").

2. *Indispensable Party*

Rule 19 of the Federal Rules of Civil Procedure, which governs the compulsory joinder of parties, presents a three step inquiry. "First, the court must determine whether a nonparty should be joined under Rule 19(a)." *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010) (internal quotation marks omitted). Second, if the nonparty (or "absentee") should be joined, the court must determine if it is feasible to join do so. *Id.* "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee or whether the action must be dismissed." *Id.* (internal quotation marks omitted). When a party seeks to dismiss a case for failure to join an indispensable party, that movant "has the burden of persuasion in arguing for dismissal." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). TMA has not carried its burden.

TMA asserts that WMG is an indispensable party to these proceedings. However, TMA does not explain why its position is correct, and it is not obvious to the Court. "An assignor of rights and liabilities under a contract generally is not needed for a just adjudication of a suit brought by the assignee. Indeed, in most cases the assignor would not even be a proper party inasmuch as the assignor may have lost the right to bring an independent action on the contract by virtue of the assignment." 7 Wright, Miller, Kane, Marcus, Steinman, *Fed. Prac. & Proc. Civ.* § 1613 (3d ed.) (footnotes omitted); *see also Foley v. Grigg*, 164 P.3d 810, 813 (Idaho 2007) ("Once an assignor makes an assignment, he no longer retains control of the subject of the assignment."). Bryant is
**MEMORANDUM DECISION AND ORDER - 11**

enforcing only those rights assigned to her by WMG and as a landlord under Idaho law. Thus, WMG's joinder is not required for the case to proceed.

## ORDER

**IT IS ORDERED THAT:**

1. Plaintiff's unopposed Motion to Strike (Dkt. 10) is **GRANTED**.

2. Defendant's Motion to Dismiss (Dkt. 5) is **DENIED**.

DATED: January 7, 2015

B. Lynn Winmill
Chief Judge
United States District Court